## THE CHAPEL-HIGH CORPORATION *v.*
## ANIELLO CAVALLARO ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, JS.

Argued June 4—decided June 29, 1954

*B. Fred Damiani,* for the appellant (named defendant).

*Samuel H. Platcow,* for the appellee (plaintiff).

O'SULLIVAN, J. The plaintiff corporation instituted this action to recover the reasonable value of the use and occupancy of a certain store owned by it. The defendants are Cavallaro and the administratrix on the estate of George C. Rogers. The court found the issues for the plaintiff against both defendants and an appeal has been taken to this court.

The finding narrates the following facts: During 1949 the plaintiff was the owner of realty in New Haven, consisting, in part, of store premises known as 1086 Chapel Street. On May 26 of that year, Nicholas Antonopoules and Bessie Morris were in possession of the store as tenants of the plaintiff and conducted therein a restaurant business. George C. Rogers, now deceased, was then sheriff of New Haven County, and Cavallaro, whom we shall call the defendant, was his duly appointed deputy. On the date mentioned, the defendant, acting under authority of a duly issued writ, entered the restaurant for the purpose of attaching the personal property of the tenants and making service of the writ upon them. At that time, Antonopoules told him that he could no longer operate the restaurant. The tenants then left the premises and have never re-

turned. When they had gone, the defendant placed on the outer door a padlock and a written notice that he had attached all the goods, wares and merchandise in the store. In his return, he neglected to set forth a description or inventory of the personalty under attachment. From May 26 until the following July 15, he retained continuous possession of the premises, and the padlock and notice remained undisturbed upon the door during that period. On the latter date, a temporary receiver in bankruptcy took possession of the store from the defendant and retained it until July 29, when the tenants were adjudicated bankrupt and the temporary receiver was appointed trustee in bankruptcy. He continued to remain in possession in the latter capacity until September 10, 1949, when the personalty which the defendant had attempted to attach was sold at public auction.

The plaintiff filed with the trustee a general claim for rent of the store from May 1, 1949, to May 26, 1949, and a preferred claim for the use of the store from July 15, 1949, to September 10, 1949. Each claim was allowed and the plaintiff shared in the assets of the estate.

Shortly after May 26, 1949, the plaintiff learned that the defendant had closed the store, but it was not until August 1, 1949, that it notified the defendant by letter of its intention to hold him liable for the use and occupancy of the store from May 26, 1949, to July 15, 1949. The reasonable value of the use and occupancy between those dates is $416.66, but the defendant has refused to pay it.

Subsequent to September 10, 1949, Rogers died and an administratrix on his estate was appointed and qualified. On March 31, 1951, the plaintiff presented to the administratrix a claim in writing for

the use and occupancy of the store while the defendant was in possession, but she disallowed the claim.

The additions to and deletions from the finding sought by the defendant cannot be entertained in the absence of an appendix setting forth the evidence on which he relies. Practice Book § 447. Fortunately for him, the corrections which he seeks are not necessary to strengthen his legal position.

The court utilized two theories to spell out liability for the defendant. One was predicated upon a trespass and the other upon a contractual relationship. Neither theory is sound. Under the first, the court held that the defendant should respond in damages because of a trespass committed to the plaintiff's realty. The statutes authorize the issuance of a writ of attachment upon the institution of an action. General Statutes §§ 7811, 8022 (as amended, Cum. Sup. 1953, § 2396c), 8023. This power to attach property on mesne process is an extraordinary one granted by the General Assembly in derogation of common right and common law. *Munger* v. *Doolan,* 75 Conn. 656, 659, 55 A. 169. The failure of an officer, such as a deputy sheriff, to pay strict observance to the statutory requirements will render the attachment invalid. *State* v. *Hartley,* 75 Conn. 104, 107, 52 A. 615. Since the defendant, in violation of a provision of § 8023, failed to describe the attached personalty, the attachment was illegal, and the parties so concede. This made the defendant a trespasser ab initio. *Anderson* v. *Cowles,* 72 Conn. 335, 338, 44 A. 477. It by no means follows, however, that the trespass was against the plaintiff's real property.

Trespass is founded on a violation of the right of possession. *Merwin* v. *Camp,* 3 Conn. 35, 40. An injury to possession is the gist of the action, and if

the plaintiff was not in either actual or constructive possession the suit cannot be sustained. *Toby* v. *Reed,* 9 Conn. 216, 223; *Wheeler* v. *Hotchkiss,* 10 Conn. 225, 231; *Avery* v. *Spicer,* 90 Conn. 576, 579, 98 A. 135. This is because the person in possession is regarded by the law as the owner, except in a contest with one who has the true title. *Fowler* v. *Fowler,* 52 Conn. 254, 257.

The question presents itself whether the plaintiff had the right of possession of the store premises at any time between May 26, 1949, when the attachment was made, and the following July 15, when the temporary receiver took charge. While it is true that the court concluded that "[o]n May 26, 1949, Antonopoules and Morris . . . surrendered their tenancy [and] the plaintiff took possession of the store premises," the subordinate facts are totally inadequate to support that conclusion. The sole facts which the court found respecting the matter under discussion were that Antonopoules informed the defendant of his intention to forego further operation of the restaurant and that the tenants then discontinued the business, left the store and never, thereafter, came back. These facts fall short of what is necessary to establish the surrender of the premises to the plaintiff and its acceptance of the cancellation of the lease, with the consequent acquisition by it of the right to possession. Nonpayment of rent did not automatically destroy the lease. It merely gave the plaintiff the option of terminating it by some definite, unequivocal act clearly showing the exercise of that option. *Kligerman* v. *Robinson,* 140 Conn. 219, 222, 99 A.2d 186; *Tseka* v. *Scher,* 135 Conn. 400, 404, 65 A.2d 169; *Thompson* v. *Coe,* 96 Conn. 644, 651, 115 A. 219; see General Statutes §§ 7107, 8274. The court failed to find that the plaintiff had

undertaken any such act between May 26 and July 15. Whatever may have been the liability of the defendant to the tenants in taking illegal possession of their restaurant under an invalid attachment, he was not responsible as a trespasser to the plaintiff because, the lease not having been terminated within those dates, the plaintiff did not have the right of possession. *People* v. *Gilbert,* 64 Ill. App. 203, 206; *Leonard* v. *Kingman,* 136 Mass. 123, 124; 4 Am. Jur. 889, § 550; note, 43 L.R.A. (N.S.) 528. As a landlord, the plaintiff cannot complain of tortious acts committed by a third person against the possessory rights of its tenants. *City Council* v. *White,* 194 Miss. 145, 151, 11 So. 2d 816; *McGavock* v. *Healy,* 265 Mich. 145, 147, 251 N.W. 315.

Nor is the defendant liable to the plaintiff for use and occupancy of the store premises. Recovery under that theory is predicated upon a contractual relationship between the parties. *Canfield* v. *Merrick,* 11 Conn. 425, 429; *Bradley* v. *Davenport,* 6 Conn. 1, 4. The facts found by the court relating to what took place between the plaintiff and the defendant do not establish any contract, express or implied, for the payment of rent. Nor is any contract to be inferred merely because on August 1, 1949, two weeks after the defendant had surrendered possession to the temporary receiver, the plaintiff sent the defendant a letter in which rent was demanded for a period of time that had expired. See *Leonard* v. *Kingman,* 136 Mass. 123, 125. As with the theory of trespass, the theory of liability for use and occupancy fails because there is no initial finding of the termination of the lease. Without that finding, the defendant cannot be held liable. *People* v. *Gilbert,* 64 Ill. App. 203, 206; *Hamilton* v. *Hamilton,* 25 N.J.L. 544, 549; *Whitman* v. *Bowe,* 56 Hun 141, 147, 9 N.Y.S. 65;

*Northwestern Mutual Life Ins. Co.* v. *Hill,* 46 S.W. 1009, 1011 (Tenn. Ch. App.) ; 32 Am. Jur. 350, § 430. Nor should the administratrix of Rogers be held liable, since her liability can be imposed only for "the neglect, wrong doing, malfeasance, misfeasance and default" of the defendant. General Statutes § 456; see § 462. If the judgment against Cavallaro falls, there is nothing in the case to warrant a judgment against the administratrix on the estate of Rogers. *Rowell* v. *Ross,* 89 Conn. 201, 214, 93 A. 236; *Schoenberger* v. *White,* 75 Conn. 605, 607, 54 A. 882.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.